Robert Haulot in a claim involving Social Security Disability Benefits. Mr. Haulot filed the claim for Social Security Benefits, alleging disability as of December 2001, at which point in time he was 49-and-a-half years old. His past work is that of an iron worker. The judge who decided this claim, and that decision is currently before you, found that Mr. Haulot could not perform any of his past work. Social Security Regulations in the United States, indicate that if Mr. Haulot is unable to perform his past work, has no transferable skills, has a high school education, is limited to sedentary work, he would conclusively be deemed disabled under Social Security grids. The problem we have in this case is the ALJ did not find that Mr. Haulot was limited to sedentary or less than sedentary work. Rather, he found that Mr. Haulot could perform what we call a range of light work, meaning he could stand or walk six hours and lift up to 20 pounds. The judge performed a five-step sequential evaluation process, as he's required to do. And steps one and two, we have no objection to. He found that Mr. Haulot has not performed any past work and that he does suffer from severe impairments. Step three, the judge found he did not meet or equal a listed impairment. If you meet or equal one of those, you're automatically disabled. We're not disputing that Mr. Haulot's impairments did not meet or equal a listed impairment. Your focus is on four and five. We are focusing on four and five. So the important matter on step four is the judge did find that Mr. Haulot could not perform his past work. So that basically takes care of step four, and we're going to be focusing on step five. The important thing to remember in this case is once Mr. Haulot satisfied step four, the burden of proof now shifts to the administration. Isn't the problem here that the ALJ discredited? The ALJ? Well, I don't want to say discredited, but he didn't accept Mr. Haulot's treating physician's opinions. That is correct. And he also discredited Mr. Haulot's testimony about his pain, the extent of his pain. Correct. So let me basically deal with that twofold. First I'll talk to you about the opinion of the treating physician. In this case, the treating physician referred Mr. Haulot out for consultations. He's had an orthopedic evaluation, neurological evaluation. They found basically mechanical low back pain, some on and off neurological symptoms. He's had a positive MRI, a positive CT scan. The treating physician certainly believed Mr. Haulot's pain and assessed what we call less than sedentary functional capacity. During the process, Mr. Haulot was seen by a number of physicians. He was seen by state agency physicians. First we have an opinion from a Dr. McPhee, who assessed a medium functional capacity, which the ALJ did not accept. So basically we're treating that as a rejected opinion evidence, and we don't think the evidence would support such a liberal functional capacity. Then we have Dr. Chawla, who examined Mr. Haulot after this case was at the appeals council. All the medical records were in. Everything was sent to Dr. Chawla. And Dr. Chawla, a state agency physician, generally agreed with the opinion of the treating physician, Dr. Wallace. So we have very consistent opinions in this case. The government, as I understand it, maintains that at least one of his treating physicians, Dr. Barranco, did not agree with this assessment. Do you agree with that? I do not. Dr. Barranco never gave us an opinion as to whether he thought Mr. Haulot could work or couldn't work. Dr. Barranco never assessed how long Mr. Haulot could sit, stand, walk, lift, carry, whether he needed to change positions. There was none of that. We did note in the district court that the magistrate said that Barranco said that, but he didn't. It's nowhere in the record. And this court's job is to review the record. And that's what we're focusing in on today, is what was actually said. As a general matter, do we look to the doctor? This is something that's always confused me about these cases. Do we look to the doctor's opinion as to whether the person is disabled, or do we look to the doctor's opinion as to what his medical circumstances are? And perhaps, you know, what he can do, but not a conclusion as to whether he's disabled. Basically, we'll look at everything the doctor has to offer. So we'll look at how much treatment there was to see how familiar the doctor is with the impairment. We'll look to see what the doctor's saying, whether he's assessing a functional capacity, whether he's opining as to the individual being able to work or not able to work. In fact, there is Social Security rulings that say if a doctor doesn't give us a functional capacity and just says he can't work, that statement alone is entitled to weight. And the judge is under an affirmative obligation. It's entitled to consideration, but it's not determinative. That's absolutely correct. It's some weight. And then as there's more treatment, as more specific the functional capacity is, as it's more consistent with other evidence in the record, it gets greater weight. What do we do with the ALJ's decision to not credit all of Mr. Hallett's testimony? With respect to his testimony, first we should look at the burden that the judge needs to meet. Here there is no evidence of exaggeration or malingering. So when ALJ is under an affirmative obligation to set forth what we call clear and convincing reasons for rejecting Mr. Hallett's testimony, that's the most stringent standard we have in Social Security law. In this case it really was not done. He mentioned that there was a discrepancy as to the amount of alcohol he drank. No one says alcohol is material to this case. It's a red herring. And there's case law that says if you're going to look at someone's testimony, it's got to be on issues relevant to the claim. Here the normal credibility factors we have is Mr. Hallett did everything he could to get better. He stayed in treatment. He's got over a 15-year great work history, consistent consecutive quarters of coverage. When he stopped working, I think he was earning about $48,000. He was forced to go on some type of disability pension through his union. They say he elected to, but the record shows that he was actually told he has to. He couldn't do -- in order to get his money, he had to go out on disability. And it's a small pension. So what are you asking us to do? I'm asking you to remand this matter for the payment of benefits. The case law is pretty clear. If the ALJ does not provide sufficient reasons to reject an individual's testimony, or if an ALJ doesn't provide sufficient reasons to reject treating physician testimony, that's the appropriate manner. One thing that interested me was the fact that you kind of bypassed Dr. Paranko. He also was a treating physician, was he not? Yes, he was. And you sort of skipped over him. You went to Wallace, who was his initial treating physician, and you went to Charla, but not emphasizing what Paranko, the neurologist, said. Well, what we have with Dr. Paranko is we don't have an opinion saying one way or the other. Dr. Paranko is a neurologist. Mr. Hallett was sent there for a neurological consultation to see if surgical intervention was required. There's no dispute. Surgical intervention is not required. So Dr. Paranko performed his physical examination. Sometimes there was neurological findings, sometimes there weren't. He did review the MRIs and the CT scans and noted that there were positive findings. And he said, look, the only treatment we can offer you is epidural injections. We look at Dr. Paranko's opinion as supporting Mr. Hallett's claim of pain. He's got objective evidence that everybody agrees would cause pain. Dr. Paranko just didn't say one way or the other. Thank you. Thank you. Good morning, Your Honors. My name is Elizabeth Fair. I represent Michael Astrew, Commissioner of Social Security. I would just like to start by saying evidence of moderate spinal stenosis, absent any nerve root or spinal cord compression or any significant clinical abnormalities, is not enough to support a claim in subjective complaints of disability, which is what we have in this case. How do we know that? I mean, one of my reactions to reading this record was that you're asserting one thing about what certain objective medical things mean, and the other side is saying other things, but that the doctor is not saying that. And the other side is saying that the doctor doesn't really seem to make those connections. Well, we do have a testifying medical expert who did review all of the evidence. He's the only medical source who did, and he synthesized the evidence. Right. And he's the one person who never saw the guy. He seems like the least important person here. That's correct. However, this Court has routinely ‑‑ I'm sorry? This Court's held that an ALJ is entitled to rely on a testifying medical expert. I think he has a good reason to. Right, if there's other substantial evidence in the record. And what we're saying here is this claimant is basically ‑‑ it's not in dispute that he has stenosis. However, he only has moderate stenosis at best, with no nerve impingement and no spinal cord impingement. And contrary to what counsel has stated, you do ‑‑ that is a requirement for the listing regarding stenosis. It's relatively clear in that, that you need stenosis with something else in order to have the significant pain. I'm saying that he had, quote, a mechanical problem rather than a neurological problem. Yes. They don't say that that couldn't cause his pain. Certainly his treating doctor didn't think there was a disconnect between the objective medical evidence and the pain. Nor did Dr. Baranca, because if he thought so, presumably he wouldn't be giving him epidurals and other things for the pain. So they seem to think that there was ‑‑ they at least thought that there was something treatable here, and they treated it. At some length, in fact. Right. But Dr. Baranca never assessed ‑‑ he never said claimants should limit his activities. But that's a different question. You started by saying that the objective evidence could not support the amount of pain he was claiming. The doctors were treating him for a significant amount of pain. They were giving him epidural shots fairly regularly. They said they didn't work, but they did give them to them. But that's subjective. As the ME testified, no objective findings can refute a subjective complaint of pain. But it is the ALJ's job, as the district court said, to review all of the evidence. And it's not just what the doctors say. It's their clinical findings that are important to this. That's right. But at least most of the doctors I know are not going to give you epidural shots, which are fairly significant things, having had one myself, if they don't think you're actually in pain. But we're not questioning that he's in pain. The ALJ did accept that his condition is likely to cause some pain, which is why he limited him to light work rather than medium. Let me ask you one ultimate question here. One of the complaints here is that the hypothetical to the VE did not talk about stress, even though the ALJ recognized stress. Is that so? That is true. I think that's true. So why isn't that just enough reason why we have to reverse right there? What's the difference between limiting someone to work that doesn't require high production quotas and low stress? In our view of the record, that's relatively the same thing. Work that doesn't have high production quotas is, by definition, low stress work. But not the opposite. There are lots of jobs that may not have production quotas at all, but are high stress. Let's look at the jobs the VE identified, a janitor, a night watchman, and a parking lot attendant. Let's take a parking lot attendant. That seems to me to be a fairly high stress job. People are fairly nasty to parking lot attendants. I would not characterize that job as a high stress job. And there was no objection made to that during the hearing testimony either. The VE was aware of all the testimony that the medical expert, Mr. Gorn, testified to. She understood what production quotas were. So I wouldn't say that's any material error in the ALJ's decision. But getting back to, I probably should discuss credibility a little bit here. The ALJ cited several reasons for finding the claimant not credible. What we have are normal strength, very limited range of motion discrepancy, or limited decrease in ranges of motion. We have no significant neurological findings. So the credibility of the claimant... What bothers me, though, is we have these treating physicians, Dr. Wallace, the one who treated him for a long time, and then the Social Security recommended Dr. Bencomo. Now, in both of those situations, when what was described to be wrong was reviewed by the vocational expert, in both instances the vocational expert said it would preclude him from any such employment. And then, in addition to that, Dr. Charla, who also was a doctor referred by the Social Security Administration, after his examination about the chronic back pain and description, the vocational expert said this also would preclude any further employment. So who are you relying on? Dr. Gorin? Dr. Gorin and the clinical findings of every doctor in the record which failed to support a finding of disability, which is what the ALJ did, which is what his job is. And Dr. Gorin never examined him, did he? That's correct. However, that's not he did. He is the only doctor who reviewed all of the evidence in the record. So your basic position is that the clinical findings could not support the degree of pain that he was claiming, period. Correct. And we think the ALJ did a reasonable job in explaining why that was the case. We do have Dr. Baracco is the most relevant expert in this record, and he didn't, as Dr. Gorin testified, he didn't even connect the claimant's alleged pain to stenosis. He said this term mechanical back pain, which is kind of a nebulous term, he never recommended limitations, he never said the claimant was disabled. But he never did say that whatever condition he found wouldn't leave him in serious pain. Again, we agree his condition can cause some pain. We don't agree with the claimant's statements that it's disabling pain. And I would also like to point out the vocational experts on the three, Dr. Fordine, two of them that were even provided and recommended by the Social Security Administration, found that he couldn't be further employed because of the pain or the depression he was experiencing. Well, the ALJ did reject those opinions, and he rejected them, again, based on the fact that their clinical findings don't support their ultimate conclusions, and he didn't find the claimant credible. And we're just going to address his credibility. Okay. Again, we were going, Rollins says that the objective medical evidence has to reasonably support the degree of pain alleged. The ALJ found that the objectives didn't reasonably support. He also noted there were some complaints the claimant made that weren't supported at all, like his leg weakness. There's no question he doesn't have weakness in his lower extremities. That most minus 5 over 5, 5 over 5 is full strength. There's no evidence of leg weakness, yet the claimant continually complained of that. He has conservative treatment. I understand epidural injections are a little beyond that, but he was never recommended to a pain clinic. He was never referred, he didn't take morphine or any kind of drug like that. And the inconsistencies in the claimant's statements, I agree they're not on their own particularly persuasive, but if you take the whole, the fact that the ALJ found that the claimant made several inconsistencies regarding his drinking, regarding his abilities to sit and stand, the ALJ did say this is evidence of a lack of candor, which is a reasonable basis for the credibility analysis. And this Court has said conservative treatment alone is enough to reject a claimant's credibility. And the last thing I would like to say is that the objective evidence in this case didn't change very often. The first time, the first MRI in this record is from July 99 when the claimant was still working. Dr. Baranko reviewed that in March 2000 when the claimant was still working, and they didn't significantly change. So all we have here is the claimant's statements that his pain is distinct. So you're relying on Baranko, not Gorin, huh? I'm relying on the entire record, Your Honor. Dr. Gorin did synthesize all of that evidence. Well, the entire record shows that the treating physician who treated him for a long time certainly thought he couldn't work, and vocational experts said the same thing. And then the two that the Social Security Administration selected, both of whom examined him and gave their findings, the vocational expert said that would preclude him from employment as well. And then you have Dr. Gorin, who you don't seem to rely on that much because he didn't examine at all, only looked at the records and some studies he had done. And you say that that is enough to contradict the ones who were treating him. A couple things, Your Honor. My time is just about up. There are two other physicians the ALJ sent the agency sent the claimant to who found medium exertional. One of them we couldn't rely on because of a signature problem, and the other one the ALJ didn't agree it was medium. However, their clinical findings and their opinions are still part of the record. And again their clinical findings are in the record. Not their ultimate conclusions were relied on by the ALJ. And again, I would like to say that we do rely on Dr. Gorin to the extent that he found the claimant could perform like that. So you're relying really on Gorin and to some extent Branko, who really doesn't support your position. And then two doctors whose opinions were rejected by the ALJ, but they have some stuff in the record. That's not entirely an accurate account of what we're relying on. We are relying on the fact that the objective evidence does not support that. Thank you. Do you want to address the question of the hypothetical and whether it was adequate or not? The hypothetical and with regard to stress. Yes. Basically, again, there's Dr. Gorin who just said low stress, but the one doctor, the only doctor who did a psychological evaluation, and it was ordered by the Social Security Administration, did a detailed examination, did all this testing, and came up with an opinion. And there's, it's silent as to why that opinion was rejected. There is no basis at all for accepting a non-treating, non-examining consulting physician's opinion over an examining consulting physician. What happened was Social Security sent my client to Dr. Chawla and Dr. Branko, both limitations that would preclude work. So they call in another doctor. And this one they just have testified by phone. If you look at the pattern here, it became for some unknown reason a very difficult case for the ALJ. But if you look at the doctor's opinions, it basically appears that the claimant's disabled. And there are two important factors I want to point out. Dr. Gorin never testified what my client could do. What Dr. Gorin said is the literature reports that somebody with the kind of problems Mr. Gorin has should be able to do light work, specifically lift and carry 20 pounds, occasionally 10 pounds frequently. It's not independent. He, literature that we've never seen. It's not cited. There's no names. It's not in the record. It's just here. And somehow the judge relied on that testimony, which the case law says you can't. The other important factor is I asked Dr. Gorin, does my client's impairments cause pain? And he said, based on this record, well, the question was, based on this record, you don't dispute that he has a pain disorder. Is that correct? And he says, correct. And the last point I want to make is my client was referred out to pain management by Dr. Wallace. I couldn't find it. My client was referred to pain management by Dr. Wallace. I couldn't find the transcript number while I was sitting there. But he clearly says it. And that's why they did the epidural injections. And Dr. Barranco talks about disc collapse. He talks about some changes on that MRI. And he also recommends epidural injections. My client has severe limiting pain. Thank you. We appreciate your argument.
judges: Hug, Paez, Berzon